## Foy and Others *v.* REDDICK.

REPLEVIN.—*House Treated as Personalty.*—*Trust.*—A., being the owner of a certain town lot on which was a dwelling house, built another house adjoining the former and permanently attached thereto, but standing in a street of the town, though he supposed that it was upon a lot. Becoming financially embarrassed, he fled the country; and an execution was issued on a judgment which had been rendered against him in favor of B., by virtue of which the sheriff levied on and sold said house in the street as personal property, C. being in possession thereof at the time of the sale. Afterwards, the agent of B., who had bid off the property for B., informed C., that by B.'s direction he would let C. have the house for. A. if C. would pay the amount it had been bid off at, and also pay said agent a small debt that A. owed him. C. thereupon wrote to A., stating the proposition made by said agent, and offering to furnish the money and buy the house for A.'s benefit. A. replied, advising C. to buy the property and sell it again, pay himself out of the proceeds, and apply the balance to the payment of A.'s debts. Subsequently, C., being the owner of the lot, purchased the house of said agent, paying him therefor the amount the agent had bid for it and a certain sum for back rent, C. furnishing the money, which A. never refunded or offered to refund. C. continued to occupy the house, always claiming it as his own, till his death, when his sole heir sold the lot and the house in the street, by two separate and distinct sales, to D. Suit by A. against D. to recover possession of the house in the street as personal property, the above facts appearing in evidence, but there being no written evidence of title to the lot in C. or D.

*Held*, that, in the absence of a conveyance to C., in terms sufficiently comprehensive to cover the house as appurtenant to the lot, it was reasonable to presume that it was properly treated by the parties as personalty.

*Held*, also, that there was no trust in favor of A.

*Held*, also, that a subsisting indebtedness of C. to A. growing out of a partnership which had existed between them long prior to the purchase of the house by the former, could not be deemed a refunding by A. of the money paid by C. for the house.

APPEAL from the Pulaski Common Pleas.

ELLIOTT, C. J.—This was a suit by Reddick against Caroline Foy and others, to recover the possession of a house as personal property, situate in a street in the town of Winamac.

An answer was filed, containing the general denial, and

another paragraph which it is not necessary to notice, as no question arises upon it in this court.

A jury being waived, the case was tried by the court, resulting in a finding and judgment for the plaintiff. A motion for a new trial was filed and overruled.

The only question presented here, which need be noticed, is, as to the sufficiency of the evience to sustain the finding of the court.

The evidence shows that, in 1858, Reddick was the owner of lot twenty-seven in Winamac, which was bounded on the north by Spring street. On the north-west corner of the lot was situate a dwelling-house, and Reddick, in 1858, built the house in controversy, which adjoins, and is permanently attached to, the house on lot twenty-seven, extending therefrom north, but stands in Spring street, and is described as a double story-and-a-half house.

One Selders subsequently became the owner of lot twenty-seven. Reddick became embarrassed, and, using his own language, left the country "prematurely." A judgment had been rendered against him in the Pulaski Circuit Court, in March, 1857, in favor of one Walker. In 1861, after Reddick had left the State, an execution was issued on Walker's judgment, by virtue of which the sheriff levied on and sold the house in controversy, as personal property. Walker became the purchaser. Selders was in possession of the house at the time of the sale. Some time after the sale, one Lane, the agent of Walker, who had bid off the property for him, informed Selders, that by Walker's direction he would let him have the house for Reddick, if he, Selders, would pay the amount it was bid off at, and pay Lane a debt of about thirty-two dollars that Reddick owed him. Selders thereupon wrote to Reddick, stating the offer made by Lane. Reddick replied, advising Selders to buy the property, and then sell it again, pay himself out of the proceeds, and apply the balance to the payment of Reddick's "honest debts."

Selders afterwards purchased the house of Lane, and paid

him the amount that he had bid for it at the sheriff's sale and ten dollars for back rent. Selders continued to occupy the house until his death, in 1864. He died without issue, leaving his widow the sole heir to his estate, who afterwards sold lot twenty-seven, and also the house in controversy, to the defendants Caroline Foy and her sister, Mary Conn. Reddick, when he built the house, did not know that he was building it in the street, but "supposed it was on a lot." He did not furnish Selders any money with which to make the purchase of Lane. Selders furnished the money himself, and ever afterwards claimed the house as his own. Reddick admitted, on the trial, that he never refunded, or offered to refund, the amount paid by Selders for the property, but at the same time testified, that he and Selders had been in partnership, and he had paid Selders otherwise, before he, Reddick, left Winamac, and that "Selders was fully paid the amount he advanced to Lane."

The first ground upon which the appellants claim a reversal of the judgment is, that the evidence shows that the house in controversy is real, and not personal, property, and hence replevin will not lie for its recovery. This position can only be maintained upon the hypothesis that it forms a part of the house on lot twenty-seven, and is therefore appurtenant to that lot. The evidence before us, however, is not sufficient to warrant such a conclusion.

It does not show any deed of conveyance, or other written evidence of title to lot twenty-seven, either to Selders or the appellants. It was shown on the trial, by parol evidence, that Selders owned the lot at the time he purchased the house of Lane, and at the time of his death; but it was sold by the sheriff as personal property, and Selders purchased it as such from Lane. And although the appellants purchased both the lot and the house of Selders' widow, yet they were two separate and distinct purchases. Indeed, the house, since 1861, seems to have been treated by all the parties as personal property, and not as appurtenant to lot

twenty-seven; and, in the absence of a conveyance of the lot to Selders, in terms sufficiently comprehensive to cover the house as appurtenant to the lot, it is but reasonable to presume that it was properly treated as personalty. Regarding it, then, as personal property, it remains to be determined whether the evidence justifies the finding of the court that Reddick was the owner of it. We do not think it does. The legality of the sheriff's sale is not controverted by Reddick. On the contrary, he claims title under it, and bases his right to recover on the assumption that Selders purchased it as his trustee and held it for him in trust, and that the right of property, as well as the right of possession, thereby vested in him. It may, perhaps, be inferred from the evidence, that Selders, at the time of the purchase, intended to let Reddick have the benefit of it, but he was under no legal obligation to do so. Reddick had no legal claim to the property. He did not furnish Selders the means to pay for it, and Selders was under no legal obligation to furnish them for his benefit. Selders bought the house and paid for it with his own money, and ever afterwards, so far as the evidence shows, claimed title in himself. He was not, in any legal sense, the trustee of Reddick in making the purchase, nor does a trust arise by implication of law from the facts under which it was made.

It may be properly remarked, in this connection, that when Selders wrote to Reddick, informing him of the offer of Lane, he did offer to furnish the money and buy the house for Reddick's benefit. The statement of Reddick, that Selders was fully repaid, amounts to nothing. It is simply a claim that he and Selders, long prior to the purchase of the house, had been partners in business, with an intimation that Selders was, in some way, indebted to him. But if such an indebtedness exists, it cannot be deemed a refunding of the money paid by Selders for the house, or in any way affect the merits of the question.

We think the court erred in refusing a new trial.

Judgment reversed, with costs, and the cause remanded for a new trial.

*G. T. Wickersham, S. E. Perkins, L. Jordan,* and *S. E. Perkins, Jr.,* for appellants.

*D. P. Baldwin,* for appellee.